Kathryn M. ZORZI, Plaintiff–Appellee,

v.

COUNTY OF PUTNAM, Philip H. Hansen, former Sheriff of Putnam County, Donald Maggi, Sheriff of Putnam County, et al., Defendants–Appellants.

No. 93–3032.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1994.

Decided July 27, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 26, 1994.

Patricia C. Benassi (argued), Charles E. Tucker, Jr., Benassi & Benassi, Peoria, IL, for plaintiff-appellee.

John E. Cassidy, III, Cassidy & Mueller, Peoria, IL (argued), for defendants-appellants.

Before MANION and ROVNER, Circuit Judges, and PLUNKETT, District Judge.*

MANION, Circuit Judge.

Putnam County Sheriff Philip Hansen terminated Kathryn Zorzi from her job as dispatcher in the sheriff's office. Because she was fired, and later because she was not reinstated by the newly elected sheriff, Zorzi sued. This is an interlocutory appeal from orders entered on counts one, two and five of Zorzi's Second Amended Complaint. Counts one and two are against Defendants–Appellants Putnam County, Illinois and its former Sheriff Philip Hansen and claim, respectively, that Zorzi's rights of political association and substantive due process secured to her under the First and Fourteenth Amendments were violated by her termination. Count five is against Putnam County, Illinois, its present sheriff, Donald Maggi and Putnam County Board members Jay Hansen, Chris Kunkel, William Urnikis and Leland Shields. It claims that Maggi and the County Board's refusal to rehire Zorzi because of her pending lawsuit violated her First and Fourteenth Amendment rights and her right to seek redress in the courts. Defendants Hansen and the County of Putnam moved for summary judgment on counts one and two based on the defense of qualified immunity. The district court denied this motion. Zorzi applied for a preliminary injunction based on count five. The district court granted this request and ordered Zorzi reinstated as a dispatcher. Defendants appeal each of these determinations. We lack jurisdiction to determine whether Hansen and Putnam County are entitled to qualified immunity on count one since this issue involves questions of fact. We reverse the denial of qualified immunity on count two because, without resolving any factual dispute, it is clear that Zorzi has not alleged a substantive due process claim. We affirm, however, the preliminary injunction ordering Zorzi's reinstatement.

## I. Factual Background

In 1979, Plaintiff, Kathryn Zorzi ("Zorzi") was hired as a dispatcher for the Putnam County Sheriff's Office. She worked as a dispatcher until her termination in 1989. This lawsuit focuses on her termination and the subsequent refusal by the Putnam County Sheriff and Putnam County Board to rehire her. To understand the circumstances of her termination, we must return to 1986.

In 1986, defendant Philip Hansen was elected sheriff of Putnam County. Zorzi had opposed Hansen's candidacy, but continued to work after his election as a dispatcher

---

* Hon. Paul E. Plunkett, District Judge for the Northern District of Illinois, is sitting by designation.

without any problems. Zorzi's son-in-law, Norman Raffety ("Raffety"), was the state's attorney at the time that Hansen was elected sheriff. After Hansen's election, Raffety and Hansen began having differences of opinion concerning Hansen's administration of his duties as sheriff. Specifically, Raffety criticized Hansen for allegedly: allowing a convicted child molester to joyride with troopers; failing to serve court orders when advised to do so by a judge; failing to preserve evidence; failing to keep prisoners secured in their cells; doing business with prisoners; and allowing prisoners to run up phone bills at the expense of the County. Judge Robert Cashen, a circuit court judge for Putnam County, and Victor Lenkaitis, the probation officer, also joined with Raffety in criticizing Hansen's official conduct. The relationship between Hansen and Raffety became hostile because of Raffety's criticisms. This hostility was compounded when Raffety called a grand jury to investigate Hansen's alleged misconduct. Zorzi was not a party to these disputes and continued to perform her duties notwithstanding the conflict between Hansen and her son-in-law, Raffety.

In 1988, Raffety ran for re-election as state's attorney. Because of the hostility between Raffety and Hansen, Hansen vigorously opposed Raffety's re-election. Zorzi, however, supported her son-in-law's candidacy and demonstrated this support by placing a bumper sticker on her car and a sign in her yard. Zorzi also attended campaign rallies and spoke with neighbors in support of Raffety's re-election.

During Raffety's re-election campaign, Hansen approached Zorzi and asked her to take a leave of absence without pay due to Hansen's opposition to Raffety's re-election. Hansen claims that he was concerned about Zorzi's health and the effect any unpleasant information concerning Raffety, circulating in the sheriff's office, would have on her health. Zorzi refused to take a leave of absence and Hansen relented. Zorzi, however, claims that after this confrontation, Hansen and his wife began harassing her by refusing to speak to her, surveilling or having others surveil her activities, and by refusing to in-clude her in office activities. Hansen denied any harassment.

Zorzi later took a medical leave of absence, which was approved from October 1988 to January 5, 1989. While Zorzi was on leave, in November of 1988, her son-in-law was re-elected state's attorney. When Zorzi returned to work on January 5, 1989, Hansen gave her a letter which accused her of "divulgence of department business and disobedience of orders" and which terminated her as a dispatcher. The information that Zorzi had allegedly divulged was a September 11, 1988 entry in the sheriff office's phone log book which stated that Judge Cashen had been seen drinking and driving. The obvious implication was that Judge Cashen was driving under the influence of alcohol, while according to Cashen the only "drinking" involved was of a soft drink. Victor Lenkaitis, the probation officer, had told Judge Cashen about this entry, causing Cashen to confront Hansen and criticize him for putting this false accusation in a phone log. Judge Cashen also told Hansen that he had learned of the entry from a source other than Raffety or Zorzi, but did not name Lenkaitis.

When confronted with the accusation of leaking the phone log entry concerning Judge Cashen, Zorzi denied being the source of the leak. Hansen told Zorzi to finish work that day while he looked into the incident. The next day, Hansen met with Raffety. Hansen told Raffety that he had fired Zorzi for leaking information from the sheriff's office. Raffety denied knowing anything about the phone log entry concerning Judge Cashen.

Zorzi was next scheduled to work on January 10, but, believing that she had been fired, she did not report. When Zorzi did not show up for work, Hansen contacted her and asked her why she had not come in. She explained that she was under the impression that she was fired. Hansen then attempted to call Raffety to discuss Zorzi's employment status. Raffety refused to become involved with the employment relationship between Hansen and his mother-in-law. Hansen then told Zorzi to leave and not to return until he gave her further notice. Hansen claims that he fired Zorzi on January 10, 1989. Zorzi main-

tains that she was actually fired on January 5.

On January 23, 1989, a special prosecutor was appointed to look into Zorzi's firing. The special prosecutor eventually notified Zorzi that she was being charged with nine violations of department policy. These alleged violations, however, did not include the phone log incident. The special prosecutor also advised Zorzi that a "pre-termination"[1] hearing would be held to determine whether or not the nine violations constituted a reasonable basis for her termination. This hearing was held on March 21, 1989. After the hearing, Sheriff Hansen informed Zorzi that she had violated five of the nine charges and, therefore, he was terminating her.

In response, on April 17, 1989, Zorzi filed a two-count complaint against Putnam County and Philip Hansen, alleging in count one that Hansen and Putnam County impermissibly fired her for her exercise of free speech and association, thus violating her First and Fourteenth Amendment rights. Count two concerned Zorzi's allegations that the circumstances surrounding her dismissal violated her Fourteenth Amendment right to due process.

While Zorzi's lawsuit was pending, the office of sheriff came up for re-election. Hansen did not seek re-election. Deputy Sheriff Donald Maggi ran instead and was elected sheriff in November of 1990. After Maggi's election, Zorzi approached him and asked for her job back. Maggi, who had worked with Zorzi prior to her termination in 1989, allegedly stated that he would like for her to come back, but that it would be up to the County Board. Later that month, Maggi met with the members of the County Board who determined that they would not rehire Zorzi. The only reason discussed by the Board for not rehiring Zorzi was her pending lawsuit against Hansen and the County of Putnam. Sheriff Maggi, however, also claims that he decided not to rehire Zorzi at this time because all of the dispatcher positions were filled.

After Maggi and the County Board refused to rehire Zorzi, she filed an amended complaint, on May 6, 1991, adding as defendants Sheriff Maggi, and County Board Members Jay Hansen, Chris Kunkel, William Urnikis, and Leland Shields. In her amended complaint she alleged in count four a violation of her First and Fourteenth Amendment rights and her right to seek redress in the courts, in count five a conspiracy prohibited by 42 U.S.C. § 1985(2), and in count six a pendent state claim for violations of the Uniform Peace Officers Disciplinary Act.

In September of 1991, a vacancy opened in the sheriff's office for a dispatcher. Zorzi asked to be rehired to fill the vacancy. She did so again in October of 1991, on January 30, 1992 and on July 7, 1992. In each instance, Maggi refused to rehire Zorzi primarily because of her pending lawsuit.

After these additional denials of employment, in January of 1993 Zorzi again amended her complaint. Her second amended complaint redrafted her cause of action in seven counts. Count one is a First and Fourteenth Amendment claim alleging an impermissible political firing; count two is a substantive due process claim; count three is a due process claim specifically regarding Zorzi's liberty interest; count four alleges a property interest in her employment and a denial of procedural due process rights because of her termination; count five alleges a violation of her First and Fourteenth Amendment rights and her right to seek redress in the courts; count six alleges a conspiracy in violation of 42 U.S.C. § 1985(2); and count seven is a pendent state claim alleging a violation of the Uniform Police Officers Disciplinary Act.

After substantial discovery, defendants moved to dismiss Zorzi's second amended complaint for failure to state a claim or, in the alternative, based on qualified immunity. The district court denied the motion to dismiss counts one, two, three, five and six and granted the motion to dismiss counts four and seven. The court also denied defendant Hansen and the County of Putnam's motion for summary judgment based on qualified immunity. Hansen and the County of Putnam (referred to collectively as "Hansen")

---

1. The special prosecutor testified that Hansen had informed her that he had not yet fired Zorzi.

appeal, interlocutorily, the district court's order denying summary judgment on counts one and two of Zorzi's second amended complaint based on qualified immunity.

In addition to the defendants' pre-trial motions, Zorzi filed a Motion for Preliminary Injunction based on count five of her second amended complaint in which she alleged a violation of her First and Fourteenth Amendment rights and her right to seek redress in the courts. The district court granted the motion, concluding that Zorzi had a likelihood of succeeding on her First and Fourteenth Amendment claims. The district court, however, also granted defendants Maggi, Jay Hansen, Chris Kunkel, William Urnikis and Leland Shields qualified immunity in their individual capacities. Defendants Maggi, Jay Hansen, Kunkel, Urnikis, and Shields (referred to collectively as "Maggi"), in their official capacities, appeal the grant of the preliminary injunction.

After this appeal was filed, Zorzi moved to dismiss the appeal of counts one and two, arguing that we lack jurisdiction over that portion of the appeal because it presents questions of fact outside our interlocutory jurisdiction for qualified immunity claims. We will address this jurisdictional issue in our discussion of qualified immunity.

## II. Analysis

### A. Qualified Immunity

On appeal, Hansen alleges that the district court erred in refusing to grant summary judgment on counts one and two of Zorzi's second amended complaint based on the defense of qualified immunity. "The defense of qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Marshall v. Allen,* 984 F.2d 787, 791 (7th Cir.1993) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ This court's review of a denial of qualified immunity is limited. "[A] district court's denial of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Gorman v. Robinson,* 977 F.2d 350, 354 (7th Cir.1992) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 529–30, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)). To the extent that an appeal seeks a resolution of factual issues, however, this court lacks jurisdiction. *Gorman,* 977 F.2d at 354; *Marshall,* 984 F.2d at 791.

> When a party appeals a denial of summary judgment on qualified immunity grounds, we evaluate the record *de novo* to determine whether we can decide the immunity questions without resolving disputed questions of fact. If we find we cannot, then we lack jurisdiction over the appeal of the immunity questions. If we can decide the question as a matter of law, then we have jurisdiction over that question.

*McDonnell v. Cournia,* 990 F.2d 963, 967 (7th Cir.1993) (citations omitted). *Accord Gorman,* 977 F.2d at 354. We consider counts one and two separately.

### 1. Count One.

In count one, Zorzi alleged that Hansen fired her because of her political support and association to the state's attorney, and that this action violated her First and Fourteenth Amendment rights.[2] "Generally, a public employee cannot be fired or subjected to other adverse employment decisions solely for political reasons. There is an exception to this rule where 'the hiring authority can demonstrate that party affiliation is an ap-

---

**2.** Specifically, Zorzi alleged in count one of her amended complaint:

Defendant Philip Hansen commenced and carried out a plan and course of action to penalize and retaliate against Plaintiff because of her association with and relationship to [mother-in-law] the state's attorney of Putnam County, who defendant Philip Hansen was seeking to coerce into abandoning a grand jury investiga-

tion and her support for his reelection to the position of state's attorney which was opposed by Defendant Philip Hansen.

The acts described herein are in direct retaliation against Plaintiff for her exercise of freedom of speech and association guaranteed to her under the First and Fourteenth Amendment of the U.S. Constitution.

propriate requirement for the effective performance of the public office involved.'" *Pounds v. Griepenstroh,* 970 F.2d 338, 340 (7th Cir.1992) (quoting *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980)).

■ On appeal, Hansen does not argue that party affiliation is an appropriate requirement for dispatchers, and for good reason. "Party affiliation is an appropriate job requirement where 'the position held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" *Pounds,* 970 F.2d at 340 (quoting *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981)). Hansen swore in an affidavit that "[t]he duties of the dispatchers were to receive and log radio and telephone transmissions, provide meals for prisoners and otherwise act as part time jailers.... At no time were my dispatchers authorized to carry guns, make arrests or to otherwise act as police officers." While the dispatchers were also designated auxiliary deputies, this was done only to enable them to receive bail bonds. "Otherwise their duties remained the same." These portions of Hansen's affidavit demonstrate that the dispatchers play no role in setting or implementing policy. Party affiliation therefore is not an appropriate job requirement for dispatchers.[3]

■ Because Hansen cannot argue that political affiliation was an appropriate qualification for dispatchers, he instead claims that he is entitled to qualified immunity on count one because the conduct alleged in count one does not set out a constitutional violation. This circuit has set out a two-part analysis for qualified immunity: "(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?" *Rakovich v. Wade,* 850 F.2d 1180, 1210 (7th Cir. 1988). The first part of this two-part test "is a threshold issue that can defeat entirely a claim of qualified immunity. If a plaintiff's allegations, even when accepted as true, do not state a cognizable violation of constitutional rights, then the plaintiff's claim fails." *Marshall,* 984 F.2d at 793. *See also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."). The plaintiff bears the burden of alleging some constitutional right. *Pounds,* 970 F.2d at 340 n. 2; *Rice v. Burks,* 999 F.2d 1172, 1174 (7th Cir. 1993). If a plaintiff fails to allege a constitutional violation, the defendant is entitled to qualified immunity. *Marshall,* 984 F.2d at 793.

■ Hansen maintains that this is the case here, namely that he is entitled to qualified immunity because Zorzi's allegations do not set out a constitutional violation. Hansen first asserts that count one fails to allege a constitutional violation because "[i]t was constitutionally permissible to fire plaintiff for political reasons in the intimate circumstances surrounding the operation of the Putnam County sheriff's office." Hansen cites *Meeks v. Grimes,* 779 F.2d 417 (7th Cir. 1985), in support of his position. In *Meeks,* this court considered whether a judge could constitutionally fire a bailiff. After concluding that the bailiff did not fit the traditional "policy-maker" or "confidential" categories, this court stated:

> It would strain credulity to read the First Amendment or *Elrod* to require an elected official to work in constant direct contact with a person viewed as a political enemy. This would seem to be contrary to the respect this court has given the governmental interest in efficient public administration under the *Branti* formulation, [citation omitted] and therefore we refuse to extend the protections of *Elrod* to intimate settings.

*Id.* 779 F.2d at 423. But we expressly limited the holding in *Meeks* stating:

> wherein this court concluded that deputy sheriffs are political appointees, subject to dismissal based on their political affiliations.

---

**3.** This distinguishes this case from *Upton v. Thompson,* 930 F.2d 1209 (7th Cir.1991), and *Dimmig v. Wahl,* 983 F.2d 86, 87 (7th Cir.1993),

We must stress the limited nature of the scope of this opinion. First, it applies to a select number of government employees: only those employees who work in direct and constant contact with a political official-employer would be exempted from the First Amendment's protection against patronage dismissals.

*Id.*

Whether Zorzi's allegations come within *Meeks'* holding, however, is not a question we can decide. The intimate nature of an office and the interaction among its workers is a very fact-specific inquiry as "differing structures of judicial systems and governments mean that each case is unique...." *Meeks,* 779 F.2d at 423 n. 7. Whether *Meeks* exempts Hansen from the requirements of *Elrod/Branti* therefore requires a factual inquiry into whether Hansen and Zorzi's working relationship was intimate and involved direct and constant contact. These facts are disputed. The sheriff claims that "his deputies and dispatchers were required to work in near proximity in very cramped quarters," while Zorzi claims that she did not work in direct and constant contact with the sheriff. Specifically, we note that in presenting her Statement of Genuine Issues of Material Fact, Zorzi listed, as the first genuine issue, that "Plaintiff did not work in 'tiny, cramped quarters' thereby creating an intimate working relationship with Defendant Philip Hansen." The exact nature of the office in which Zorzi worked must therefore be determined by the trier of fact before we obtain jurisdiction to apply these facts to the law.[4] This issue of material fact precludes us from considering Hansen's assertion that *Meeks* al-lowed him to fire Zorzi without violating the Constitution.

In the alternative, Hansen asserts that he is entitled to qualified immunity because it was not "clearly established that retaliation because of hostility against a relative or any third person violated the first and fourteenth amendments."[5] In making this argument, Hansen specifically claims that he fired Zorzi, not for her own political activity, but rather because she was related to Raffety. This, he argues, presents a question of law—whether the Constitution prevents the firing of the relative of a political opponent— which this court has jurisdiction to review. Hansen then proceeds with an analysis of constitutional law in an effort to demonstrate that he could constitutionally fire Zorzi for her son-in-law's political activities.

This line of reasoning, however, begs the question: Why did Hansen fire Zorzi? *Cf. O'Connor v. Chicago Transit Authority,* 985 F.2d 1362, 1367 (7th Cir.1993) ("As there was a disputed factual issue regarding why defendant dismissed plaintiff, the district court was in no position to grant summary judgment in defendant's favor on the issue of qualified immunity against plaintiff's First Amendment claims. Resolution of this issue is a predicate to any meaningful qualified immunity analysis.") (quoting *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 47 (1st Cir.1988)). Zorzi asserts that she was fired for her political support of her son-in-law, not merely her relationship to him, while Hansen claims on appeal that he fired Zorzi for her son-in-law's political activity, not her own. This of course is a question of fact.[6] *Gor-*

---

4. We emphasize that the important question concerning the nature of the office is not simply the physical proximity in which the political opponents work, but rather the type of work each performed and the amount of personal contact and interaction their duties required.

5. Before the district court, Hansen also argued that count one fails to state a constitutional violation because he fired Zorzi based on Judge Cashen's refusal "to reveal the surreptitious source of his information concerning time content of the phone log—not because of her political associations, activities or expressions." Hansen, recognizing that this argument is outside of our jurisdiction, does not seek reversal on this basis. *See Gorman,* 977 F.2d at 355.

6. Hansen argues that since Zorzi's support for Raffety's re-election was so minor, it could not have been the reason he fired her. Not only is Hansen's characterization of Zorzi's support as "minor" troubling—Zorzi placed a bumper sticker on her car and a sign on her lawn in front of her house supporting Raffety; she also attended rallies and spoke with neighbors in support of Raffety—it is disputed by Zorzi. Zorzi claims that she actively and openly supported her son-in-law's re-election. Zorzi also claims that this support was the reason for her termination. During oral arguments, Hansen's attorney even admitted that whether Hansen fired Zorzi for her political support of Raffety or her relation to Raffety was disputed.

*man*, 977 F.2d at 355 (holding that the court lacked jurisdiction to determine whether the defendants were discharged because of poor performance or because of their cooperation with the FBI). We lack jurisdiction to make this determination.[7] *Id.; Wrigley v. Greanias*, 842 F.2d 955, 960 (7th Cir.1988) (where defendant did not accept facts as correct and argue issues of law, but rather issue of facts, summary judgment is not appropriate).

As the above analysis demonstrates, we lack jurisdiction to consider Hansen's arguments that it was constitutionally permissible to fire Zorzi for her son-in-law's political activities or, in any event, under *Meeks* it was constitutionally permissible to fire Zorzi. These are the only arguments that Hansen presents on appeal supporting reversal of the denial of qualified immunity on count one. Therefore, we lack jurisdiction over this portion of Hansen's appeal.

*2. Count Two.*

In count two Zorzi alleged that the circumstances surrounding her termination, and Hansen's handling of the termination—including the "sham pre-termination hearing"—violated her right to substantive due process.[8] The district court denied summary judgment on count two based on qualified immunity because the circumstances surrounding Zorzi's termination were in dispute.

■ Hansen, however, claims that he is not challenging any of Zorzi's factual allegations. Rather, he claims that he is entitled to qualified immunity because count two does not set forth a substantive due process violation, or at least not one that is clearly established. Hansen claims that we can determine this issue as a matter of law without resolving any factual dispute. We agree.[9]

■ As noted above, if a plaintiff fails to allege a constitutional violation, the defendant is entitled to qualified immunity. *Marshall*, 984 F.2d at 793. The plaintiff bears the burden of pointing to analogous cases that establish some constitutional right. *Pounds*, 970 F.2d at 340 n. 2; *Rice*, 999 F.2d at 1174. And this presents a purely legal question. *Siegert*, 500 U.S. at 232–33, 111 S.Ct. at 1793–94.

■ Zorzi asserts, in count two, a claim based on substantive due process. A claim based on substantive due process must be based on the deprivation of an underlying protected life, liberty or property interest. *Jeffries v. Turkey Run Consol. School Dist.*, 492 F.2d 1, 3–4 (7th Cir.1974). *Accord New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir.1990); *Smith v. Board of Educ. of City of Chicago*, 853 F.2d 517, 520 (7th Cir.1988). "Accordingly, the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument." *Jeffries*, 492 F.2d at 3–4.

■ On appeal, Zorzi claims that Hansen's actions, as set forth in her com-

---

7. Zorzi also claims that firing her for her relationship to Raffety violated her constitutional right of association. Because we lack jurisdiction over this portion of the appeal, we need not consider the validity of this position.

8. Specifically, Zorzi alleged in count two of her amended complaint:

Defendant Philip Hansen's termination of Plaintiff and his dissemination of the reasons for her termination which he knew to be false; i.e., the leaking of confidential logs from the sheriff's office, the procurement of a special prosecutor to bring charges against Plaintiff which were not the asserted reasons for her termination and which were in fact, bogus, requiring Plaintiff to participate in a sham "pre-termination hearing" when Plaintiff was already terminated and forcing Plaintiff to answer charges to defend her job while the as-

serted reasons for her termination were kept secret, is conduct which is arbitrary, capricious and shocks the conscience. Further, the asserted reasons for Plaintiff's termination was without basis in fact, and trivial, pretextual, whimsical and discriminatory.

Defendants actions ... are a denial of Plaintiff's rights to substantive due process under the Fourteenth Amendment of the U.S. Constitution.

9. Where an appeal presents multiple issues concerning qualified immunity, it is appropriate to dismiss for want of jurisdiction those which present factual issues and to resolve those which present legal issues. *Elliott v. Thomas*, 937 F.2d 338, 342–43 (7th Cir.1991); *Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir.1993). Therefore, our dismissal of that portion of Hansen's appeal concerning count one does not preclude our review of count two.

plaint, deprived her of a liberty interest. If such a liberty interest exists, it is properly categorized as an occupational liberty. Occupational liberty, however, is not protected by substantive due process. *Illinois Psychological Ass'n. v. Falk,* 818 F.2d 1337, 1343–44 (7th Cir.1987). Rather, any cause of action for the deprivation of occupational liberty would be confined to a claim under procedural due process; there is no such cause of action under substantive due process. *Id.*

 The allegations in count two do not set forth any additional life, liberty or property interest. Zorzi nonetheless argues that she may bring a substantive due process claim because her termination was arbitrary and capricious. However, as stated above, "[b]efore a party may assert a due process argument—procedural or substantive—it must establish that it has a 'legitimate claim of entitlement' to the right being asserted." *New Burnham,* 910 F.2d at 1479 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). In other words, no abstract right to substantive due process exists under the Constitution. *Jeffries,* 492 F.2d at 4; *New Burnham,* 910 F.2d at 1479; *Smith,* 853 F.2d at 520. Thus, in the absence of a life, liberty or property interest Zorzi could be terminated for arbitrary and capricious reasons. *See DeTomaso v. McGinnis,* 970 F.2d 211, 214 (7th Cir.1992) (without a life, liberty or property interest a plaintiff cannot maintain a substantive due process cause of action for alleged "arbitrary" actions). Therefore, without resolving any factual questions as to why Hansen fired Zorzi, we can determine as a matter of law that Hansen is entitled to qualified immunity on count two of Zorzi's second amended complaint.

### B. Preliminary Injunction

 As her lawsuit progressed and Zorzi was continually denied the opportunity to work as a dispatcher for Putnam County, she petitioned the court for a preliminary injunction ordering her reinstatement. Zorzi's preliminary injunction was based on count five of her second amended complaint wherein she alleged that the new sheriff, Donald Maggi, and the Putnam County Board had violated her First and Fourteenth Amendment rights and her right to seek redress in the courts by refusing to rehire her. When considering a preliminary injunction, a court must balance four factors. *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992). The moving party initially must demonstrate: (1) that it has no adequate remedy at law and it will suffer irreparable harm if preliminary relief is denied and (2) that it has a likelihood of success on the merits. *Id.* at 11. If this threshold showing is made, the court must then consider: (3) whether the irreparable harm to the party seeking the preliminary relief outweighs any irreparable injury that the non-moving party will suffer if the injunction is issued, and (4) the impact on the public interest. *Id.* at 11–12. We have jurisdiction for an interlocutory appeal of an order granting an injunction, pursuant to 28 U.S.C. § 1292(a)(1). In reviewing a district court's decision, we will reverse the issuance of a preliminary injunction only if the district court abused its discretion. *Id.* at 12.

 Here, the district court granted Zorzi's motion for a preliminary injunction based on count five and ordered Zorzi reinstated. On appeal, Maggi only challenges the district court's determination that Zorzi had a likelihood of success on the merits of count five. Therefore, he has waived any objection to the district court's resolution of the other three factors germane to the issuance of a preliminary injunction.

In count five of her second amended complaint, Zorzi claims that Maggi violated her First and Fourteenth Amendment rights and her right to seek redress in the courts by refusing to rehire her. Zorzi initially presented this to the district court as being based on a broad constitutional right to access to the courts. The district court rejected this argument, noting that this court has held instead that it is the right of "political expression and not the general right to bring suit in federal court of law" that protects a public employee from retaliation for filing a lawsuit. *Altman v. Hurst,* 734 F.2d 1240, 1244 n. 10 (7th Cir.1984). *See also Berndt v. Jacobi,* 781 F.Supp. 553, 557 (N.D.Ill.1991),

**896**

*aff'd* 978 F.2d 1261 (7th Cir.1992) (unpublished opinion).

 The district court was correct. Retaliation for filing a lawsuit is prohibited by the First Amendment's protection of free speech, not some concept of an independent right of access to courts. *Altman,* 734 F.2d at 1244 n. 10; *Marshall,* 984 F.2d at 794; *Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d 412, 419 (7th Cir.1988); *Berndt,* 781 F.Supp. at 557. This protection, however, is limited in the case of public employees. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983). If a public employee is retaliated against for filing a lawsuit, the public employee has no First Amendment claim unless the lawsuit involves a matter of public concern.[10] *Marshall,* 984 F.2d at 794. "This formulation dovetails with the *Connick* rule that limits the first amendment protection given public employees to pronouncements on public issues." *Altman,* 734 F.2d at 1244 n. 10. In *Connick* the United States Supreme Court set forth the applicable standard for determining whether an employee's speech relates to a matter of public concern and is therefore protected by the First Amendment. The Court specifically stated that, "whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the record as a whole." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. "[C]ontent is the greatest single factor. . . ." *Berg v. Hunter,* 854 F.2d 238, 243 (7th Cir.1988); *Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984).

 Zorzi argues alternatively that under *Connick,* Hansen's refusal to rehire her violated her First Amendment rights because her lawsuit involved a matter of public concern. To determine if Zorzi's speech involves a matter of public concern, we must examine the content, form and context of her lawsuit. This is a question of law. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7.

This question is not always easy, however, as, " '[m]atters of public concern' are rarely so easily discerned." *Belk v. Town of Minocqua,* 858 F.2d 1258, 1263 n. 7 (7th Cir.1988).

 Zorzi alleged in her lawsuit that Hansen fired her for her political support of the state's attorney in violation of her right to free speech. Political speech is clearly a matter of public concern, as is the fact that a governmental employer would fire an employee for his political speech or support of a candidate. *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691 ("Whether assistant district attorneys are pressured to work in political campaigns is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal.") The content of Zorzi's speech therefore involved matters of public concern. *See, e.g., Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir. 1990) (lawsuit involved a matter of public concern where underlying facts were of public concern).

The context of Zorzi's speech is even more demonstrative of the public concern underlying her lawsuit. Zorzi's claim that Hansen fired her for her political support of the state's attorney is understood by looking at the hostility Hansen had toward Raffety and the reason for this hostility—Raffety had openly criticized Hansen's performance as sheriff and had called a grand jury to investigate his actions. Taken in context then, Zorzi's lawsuit exposed areas of alleged misfeasance in the running of the Putnam County Sheriff's Office, including the allegations Raffety, Cashen and Lenkaitis made that he: allowed a convicted child molester to joyride with troopers; failed to serve court orders when advised to do so by a judge; failed to preserve evidence; failed to keep prisoners secured in their cells; did business with prisoners; and allowed prisoners to run up phone bills at the expense of the County. In *Auriemma,* 910 F.2d at 1460, we noted that "[i]t would be difficult to find a matter of

---

10. In this case, Maggi and the County Board did not fire Zorzi from her position, rather they refused to rehire her even after a vacancy occurred in the dispatcher's office. This distinction is irrelevant, however, because a party may "establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedom." *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

greater public concern in a large metropolitan area than police protection and public safety." While this is not a large metropolitan police department, the public concern for police protection and public safety in a small community is no less important.[11]

 In response, Maggi claims that since Zorzi "seeks nothing more than her job back and substantial compensatory and punitive damages for herself," her lawsuit does not involve a public concern. We disagree. This court has held that, in determining whether a matter involves a public concern, this court considers the point or motive behind the speech. *Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir.1994); *Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir.1987); *Berg,* 854 F.2d at 242; *Marshall,* 984 F.2d at 795; *Linhart v. Glatfelter,* 771 F.2d 1004, 1010 (7th Cir. 1985) (" 'was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?' "). But an employee's motive in speaking is not dispositive. *Berg,* 854 F.2d at 242–43; *Belk,* 858 F.2d at 1264. "A fair reading of *Connick* simply will not support the use of such a litmus test." *Belk,* 858 F.2d at 1264. *See also Auriemma,* 910 F.2d at 1460 (the determination of public concern does not rest on the fact the plaintiffs filed a suit for damages and would benefit but also on the other factors discussed in *Connick* ). Thus, "the mere fact that an employer's statement is an outgrowth of his personal dispute does not prevent some aspect of it from touching upon matters of public concern, as *Connick* itself makes clear." *Berg,* 854 F.2d at 242. Rather, "[e]ven if the plaintiffs themselves viewed their problems as only a personal matter, the test of public concern is more objective. It does not depend entirely on the fact the plaintiffs filed a suit for damages and would

benefit but also on the other factors discussed in *Connick.*" *Auriemma,* 910 F.2d at 1460. Therefore that Zorzi had a personal motive for filing this suit and sought remedies of a personal nature (her job back and damages) does not prevent the lawsuit from being a matter of public concern.

Maggi also cites *Yatvin,* 840 F.2d at 419, and *Berndt,* 781 F.Supp. 553, in support of his position that Zorzi's lawsuit did not involve a public concern. In *Yatvin,* a plaintiff filed suit claiming that she was retaliated against for an earlier sexual harassment suit she filed against her employer. This court held that retaliation based on the suit was not a matter of public concern because the plaintiff failed "to distinguish this case from the run-of-the-mine single-plaintiff discrimination case. The lawsuit does not seek relief against pervasive or systemic misconduct by a public agency or public officials and, ... is not part of an overall effort *by the plaintiff* or by persons or groups allied with her to correct allegedly unlawful practices or bring them to public attention." *Yatvin,* 840 F.2d at 420 (emphasis added).

The fact that only a single plaintiff files a suit is not dispositive. *Yatvin* recognized this by stating that "the lawsuit does not seek relief ... by the plaintiff or by persons or groups allied with her ... to correct allegedly unlawful practices or bring them to public attention." *Id.* A lawsuit over a single incident may not rise to the level of public concern, *see Berndt,* 781 F.Supp. at 559 (lawsuit based on one instance where disciplinary action was carried out against officer does not involve an issue of public concern). However, this suit involves a broader dispute and seeks to remedy a systematic harm. Zorzi was allegedly fired for her political support of the state's attorney. While she was the only person fired for this reason, the firing may have had a chilling effect on all of

---

**11.** Also evidencing that Zorzi's lawsuit involved a matter of public concern is the fact that numerous newspaper stories covered the lawsuit and the subject of the lawsuit. *See Auriemma,* 910 F.2d at 1460 (newspaper story is evidence of public concern); *Marshall,* 984 F.2d at 795–96. That is not to say that media coverage is dispositive of a public concern. "[I]t is important not to equate the public's curiosity about a matter with

the matter having societal ramifications. People may be interested in any number of aspects of the lives of public officials and employees, but that does not mean that such matter have societal ramifications. Conversely, the public may be extremely apathetic about certain matters of public concern...." *Belk,* 858 F.2d at 1263 n. 7 (quoting *Egger v. Phillips,* 710 F.2d 292, 316–17 (7th Cir.1983)).

the other employees. It also threatened to prevent the general public from learning of the problems in the Putnam County Sheriff's Office. This misconduct is pervasive and systematic. *See, e.g., Auriemma*, 910 F.2d at 1460 (misconduct that endangered the public safety is pervasive and systemic).

The reasoning underlying *Yatvin* further distinguishes the present case from the run-of-the-mine, single plaintiff, discrimination case. In *Yatvin*, the plaintiff filed suit claiming that she was discriminated against for filing a sex discrimination suit. In holding that the plaintiff was not protected by the First Amendment, this court explained that: "Necessarily, by filing suit in an area of debated legal principles Yatvin raised issues of public significance; but the market-place of ideas would not have been constricted, the vitality of public debate diminished, or the range of ideas and opinions in our society curtailed, if fear of retaliation had caused her to refrain from filing charges of sex discrimination." *Yatvin*, 840 F.2d at 419. In this case, on the other hand, had Zorzi not filed this suit, the market-place of ideas could very well have been constricted by discouraging other employees from engaging in political speech.

For the foregoing reasons, we conclude that Zorzi's lawsuit related in part to an issue of public concern. To recover on a First Amendment retaliation claim, however, Zorzi must also prove that Maggi retaliated against her because of her speech. *Gorman v. Robinson*, 977 F.2d 350, 354 (7th Cir.1992). In appealing the district court's conclusion that Zorzi had a likelihood of success on her First Amendment retaliation claim, Maggi did not challenge the district court's conclusion that he had retaliated against her because of her speech. We therefore need not consider this issue.

This is still not the end of the inquiry, however. "[E]ven if a public employee's speech touches upon a matter of public concern, the employer may constitutionally discharge the employee for that speech if the government's interest in the 'effective and efficient fulfillment of its responsibilities to the public' outweigh the employee's interest in speaking." *Marshall*, 984 F.2d at 797 n. 8.

Maggi has waived this inquiry by not seeking to invoke this balancing interest to argue that his refusal to rehire Zorzi is constitutionally permissible.

For the foregoing reasons, we affirm the preliminary injunction.

### III. Conclusion

We lack jurisdiction to determine whether Hansen and the County of Putnam are entitled to qualified immunity on count one because this presents a question of fact. We reverse the denial of qualified immunity on count two because, without resolving any factual dispute, it is clear that Zorzi has not alleged a substantive due process right. And finally, we affirm the preliminary injunction ordering Zorzi reinstated because Zorzi's lawsuit concerned a matter of public concern and that is the only aspect of the preliminary injunction Maggi challenged.