Jess **BURGESS** and Marilyn Thompkins, Plaintiffs–Appellees,

v.

Louis **LOWERY**, et al., Defendants–Appellants.

No. 98–3567.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1999.

Decided Jan. 18, 2000.

Rehearing and Rehearing En Banc Denied Feb. 24, 2000.

Janine L. Hoft (argued), Janis M. Susler, People's Law Office, Chicago, IL, Plaintiffs–Appellees.

Mark W. Marlott, Office of the Attorney General, Criminal Appeals Division, Springfield, IL, Deborah L. Ahlstrand, Michael P. Doyle (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellants.

Before POSNER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

POSNER, Chief Judge.

The plaintiffs, respectively the father and wife of inmates on death row in an Illinois prison, brought suit in federal district court against prison officials who forced each of the plaintiffs to submit to a strip search as a condition of being permitted to visit the inmate. Illinois prison regulations authorize strip searches of visitors only if the visitor consents *and* there is reasonable suspicion that he is carrying contraband. 20 Ill.Adm.Code § 501.220(a)(3). The regulations apply indifferently to visitors to death-row inmates and to visitors to other inmates. The plaintiffs signed the consent form but claim that the defendants had no reasonable basis for suspicion that they were carrying contraband and that consequently the searches violated the Fourth Amendment, which has of course been held applicable to state action by virtue of the Fourteenth Amendment. They seek both damages and injunctive relief.

The defendants moved to dismiss, initially complaining that they did have a reasonable suspicion that the plaintiffs were carrying contraband (although the searches did not turn up any); but this was contested and the contest remains unresolved, and so the motion was denied. The defendants appeal the denial on the distinct ground that they have a qualified immunity from a suit for damages because when they conducted the strip searches of the plaintiffs (between 1995 and 1997) the right of a prison visitor to be free from such searches unless the visitor was reasonably suspected of carrying contraband was not yet clearly established. Indeed they claim that it is not clearly established

today and that, on the contrary, so long as they have the plaintiffs' consent to the search they are free to conduct it without having any basis at all for suspecting that the search will turn up contraband.

The denial of the motion to dismiss was of course not a final order; but insofar as it subjected the defendants to the threat of damages liability, they were entitled to appeal immediately for the purpose of showing, if they could, that the uncontested facts (namely that the plaintiffs were prison visitors who signed a consent form for a strip search) established immunity from damages. *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Zorzi v. County of Putnam*, 30 F.3d 885, 891 (7th Cir.1994). It is irrelevant that the suit also seeks injunctive relief. There is no immunity from a suit for such relief, but a plaintiff cannot block a defendant's right to take an immediate appeal from a ruling that the defendant lacks immunity from a damages judgment merely by asking for injunctive relief as well as damages. E.g., *Scott v. Lacy*, 811 F.2d 1153 (7th Cir.1987) (per curiam); *DiMartini v. Ferrin*, 889 F.2d 922, 924–25 (1989), amended on other grounds, 906 F.2d 465 (9th Cir.1990); *Acierno v. Cloutier*, 40 F.3d 597, 608–09 (3d Cir.1994) (en banc); see also *Behrens v. Pelletier*, 516 U.S. 299, 306, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).

The defendants cannot argue on this appeal that the challenged searches were in compliance with the regulations because based on reasonable suspicion; that argument would involve a factual contest and we have no jurisdiction to consider a basis for immunity that depends on an unresolved factual dispute. *Johnson v. Jones*, 515 U.S. 304, 313–18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 267 n. 3 (2d Cir.1999). But the suit is not for violation of the regulations (there would in any event be no basis for federal jurisdiction of such a suit); it is for violation of the Constitution; and the defendants are free to argue that reasonable suspicion is not (or was not

when the searches were conducted, but in fact there have been no pertinent changes in the law since then) a constitutional prerequisite to a strip search of a prison visitor.

Neither the Supreme Court nor this court has decided the question, and while the defendants concede that a decision by the Supreme Court, or by this court in the absence of an intercircuit conflict, would sufficiently establish the impropriety of such searches to defeat a defense of immunity, they intimate that without such a decision the defense must be sustained. Neither the concession, except insofar as the reference to a decision by the Supreme Court is concerned, nor the qualification is sound. Even if our court had decided that strip searches of prison visitors were unconstitutional in the absence of reasonable suspicion, there might be enough doubt about the soundness of the decision, whether in light of decisions by other circuits before or after our decision or of intimations in Supreme Court decisions not squarely on point that our view might be erroneous, to justify the state in believing that the plaintiff's right was not yet "clearly established" within the meaning of the cases on immunity. *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1341 n. 11 (11th Cir.1998). The Fifth Circuit has held the contrary, *Brady v. Fort Bend County*, 58 F.3d 173, 175 (5th Cir.1995); *Boddie v. City of Columbus*, 989 F.2d 745, 748 (5th Cir.1993), but with all respect we cannot believe that its view is correct. Suppose the only relevant case the Fifth Circuit had decided was very old, and every other circuit since had rejected the position taken in the Fifth Circuit's decision. It would be odd in such circumstances to suppose that right *clearly* established even in the Fifth Circuit, given that courts can and not infrequently do overrule decisions that seem clearly out of step with the rest of the legal universe.

Equally, however, the absence of a decision by the Supreme Court or this court cannot be conclusive on the issue

whether a right is clearly established in this circuit. There might be no decision in either court simply because the existence of the right was so clear, as a matter of the wording of a constitutional or statutory provision or decisions in other circuits or in the state courts, that no one thought it worth while to litigate the issue. E.g., *Anderson v. Romero,* 72 F.3d 518, 526–27 (7th Cir.1995); *Buonocore v. Harris,* 65 F.3d 347, 356–57 (4th Cir.1995); cf. *Key v. Grayson,* 179 F.3d 996, 999–1000 (6th Cir. 1999). To rule that until the Supreme Court has spoken, no right of litigants in this circuit can be deemed established before we have decided the issue would discourage anyone from being the first to bring a damages suit in this court; he would be *certain* to be unable to obtain any damages.

In a long and unbroken series of decisions by our sister circuits stretching back to the early 1980s, it had become well established long before these defendants subjected these plaintiffs to strip searches that strip searches of prison visitors were unconstitutional in the absence of reasonable suspicion that the visitor was carrying contraband. E.g., *Spear v. Sowders,* 71 F.3d 626, 630 (6th Cir.1995) (en banc); *Daugherty v. Campbell,* 935 F.2d 780, 787 (6th Cir.1991); *Cochrane v. Quattrocchi,* 949 F.2d 11 (1st Cir.1991); *Smothers v. Gibson,* 778 F.2d 470, 473 (8th Cir.1985); *Thorne v. Jones,* 765 F.2d 1270, 1276–77 (5th Cir.1985); see also *Varrone v. Bilotti,* 123 F.3d 75, 78–79 (2d Cir.1997). The defendants seek to distinguish these cases by pointing out that the plaintiffs in them, unlike the plaintiffs in this case, had not signed forms consenting to be strip searched. The defendants are inaccurate. In some cases the plaintiffs had signed consent forms, e.g., *Cochrane v. Quattrocchi, supra,* 949 F.2d at 14; *Thorne v. Jones, supra,* 765 F.2d at 1276, while in others consent was implicit. It was implicit because, if a visitor showed up at the gates of the prison and was told that anyone who visits an inmate has to submit to a strip search, and replied that in that event she would not visit him, the guards would

not seize her and subject her to the strip search anyway—or if they did, they would be violating the Fourth Amendment, as *Spear* makes clear, 71 F.3d at 632, since a mere refusal to consent would not establish probable cause to believe that the visitor was carrying contraband. The visitor thus always had the legal option of avoiding the strip search by forgoing the visit. And she always knew that if she did not forgo the visit, she would have to submit to the search. Hence, if she went ahead and made the visit, she was implicitly consenting to be searched. Formalizing these options by furnishing the visitor with a consent form does not alter the constitutional issue.

But in addition the defendants point us to two cases by the Supreme Court of Hawaii, decided in 1978 and 1980, that upheld, against federal constitutional challenges similar to the one mounted by the plaintiffs in this case, strip searches of prison visitors without reasonable suspicion. *State v. Martinez,* 59 Haw. 366, 580 P.2d 1282 (1978); *State v. Custodio,* 62 Haw. 1, 607 P.2d 1048 (1980). The plaintiffs riposte that a state supreme court's view of a federal constitutional question should not be given the same weight as a federal court of appeals' view, but this is wrong. State judges like federal judges take an oath to uphold the Constitution of the United States, and unlike the converse case of federal judges enforcing state law, where it is accepted that the ultimate authority on questions of state law resides with state rather than federal courts, the federal courts of appeals do not have the ultimate authority to decide issues of federal law. That authority resides in the Supreme Court of the United States. And if federal judges are more sympathetic to federal constitutional rights than state judges are, then it is no doubt equally the case that federal judges are less sympathetic to state interests than state judges are; and since the scope of federal constitutional rights against state action is determined by a balancing of the interests of

the individual against the interests of the community, there is no basis for an a priori belief that federal judges have a superior perspective on the scope of federal constitutional rights to that of state judges. See Paul M. Bator, "The State Courts and Federal Constitutional Litigation," 22 *Wm. & Mary L. Rev.* 605, 631–35 (1981).

■ But we do not think that it can be the law of official immunity that one contrary decision at either the federal court of appeals or the state supreme court level (or, for that matter, two or more decisions by the same federal court of appeals or state supreme court) provides an automatic safe harbor. *Pro v. Donatucci,* 81 F.3d 1283, 1292 (3d Cir.1996); *Garcia by Garcia v. Miera,* 817 F.2d 650, 658 (10th Cir.1987). The test, formulated with particular application to this case, ought to be whether a reasonable official in the position of these defendants, considering all relevant sources of guidance to the law, might have thought it reasonably possible that this court or eventually the U.S. Supreme Court would hold that strip searches of prison visitors are proper even without reasonable suspicion.

*Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1699–1701, 143 L.Ed.2d 818 (1999), the Supreme Court's latest word on immunity, is not to the contrary. The question at issue in that case—whether it violates the Fourth Amendment for the police to bring along a reporter when making an arrest—had not, when the arrest in question took place, been the subject of a reported decision, apart from one intermediate state court decision. A federal court of appeals decision rendered shortly before the arrest provided some support for the plaintiff's position, but was distinguishable on its facts (the guest in that case was a private security guard, not a reporter). The Court did not lay down a "safe harbor" rule. It left undisturbed the standard of *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is do-

ing violates that right." The relevant sources of law from which perception of those contours is derived include not only cases on point but also the constitutional tradition that generates those decisions. In part at least the defendants accept this proposition, because they ask us to apply the doctrine of unconstitutional conditions to this case, even though it has not surfaced in any previous decision dealing with strip searches. But they go further, arguing that because the doctrine was not mentioned in the previous cases on which the plaintiffs rely to show that the right sought to be enforced in this case is well established, those cases are not authority for the plaintiffs' position. This is clearly wrong, though we can find no case on the question, because it would mean that any time a state official could think of an argument for some position that had not been mentioned in a previous decision the contrary of that position could not be considered established in law. Decisions would have no authority if their writ ran only to the arguments explicitly discussed in them.

Still, the defendants are free to urge us to reject the decisions in the other circuits on the basis of the doctrine of unconstitutional conditions, and even if they do not convince us, if they can create enough doubt to show that the right on which this suit is predicated cannot be deemed clearly established, they will have won on immunity, though they will remain subject to being enjoined. So let us consider that doctrine. When we say that the defendants appeal to it, we really mean they appeal to its predecessor, the doctrine memorably stated by Justice Holmes that it is not a constitutional violation to condition a benefit on the waiver of a constitutional right. *McAuliffe v. Mayor, etc., of City of New Bedford,* 155 Mass. 216, 29 N.E. 517 (1892). On this view, a rule denying free speech to police officers is valid because it does not really deny free speech; it merely asks the would-be officer to decide whether he would rather speak freely or be a police officer. Note, "Unconstitutional Conditions," 73 *Harv. L. Rev.* 1595 (1960).

Later cases rejected the Holmesian doctrine and held that conditions, as well as outright prohibitions, can be unconstitutional. E.g., *Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 674–75, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). The clearest case is where the condition is discriminatory. No one has a right to visit an aircraft carrier, but if the Navy allowed everyone except Jews to visit its aircraft carriers it would be denying the equal protection of the laws. But that is *too* clear a case, because the equal protection clause is not about rights, but about equal treatment. Where rights are involved, it is easy to imagine cases in which conditioning is a lesser infringement than prohibiting. People who work for the CIA accept that they will have less freedom of speech than if they worked for McDonald's, but since the condition is a reasonable one the restriction on their freedom of speech is not considered unconstitutional. See, e.g., *Snepp v. United States*, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (per curiam).

■ What the law of "unconstitutional conditions" boils down to, so far as it might be thought to help governments seeking to curtail the usual freedoms—in which application it ought to be called something like the doctrine of "constitutional conditioning"—is simply that conditions can lawfully be imposed on the receipt of a benefit—conditions that may include the surrender of a constitutional right, such as the right to be free from unreasonable searches and seizures—provided the conditions are reasonable. This was the approach that the district judge took in this case, and the fact that he didn't mention the doctrine of unconstitutional conditions in evaluating the state's arguments can hardly matter, especially since the doctrine is invariably viewed as a basis for invalidating, not defending, challenged governmental action.

Clearly it is reasonable, regardless of the doctrinal rubric, for the government to require airline passengers to step through a metal detector even though there is no reasonable suspicion that a given passenger is carrying a weapon. In part because the search is not intrusive, and in part because of the danger that an armed passenger poses on an airplane in flight, this condition on the right to travel by air is reasonable. *Edmond v. Goldsmith*, 183 F.3d 659, 664 (7th Cir.1999). Similar conditions are imposed in other administrative-search contexts, to which the search of prison visitors can be analogized. (Some are the converse of the prison-visit case, as where having to submit to inspections by unwanted "visitors" is upheld as a condition of owning rental property. *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574 (7th Cir.1999).) We can imagine an argument that death-row prisoners and their families are so desperate that requiring reasonable suspicion as a condition of subjecting visitors to a strip search provides insufficient protection against escape or suicide, but that argument is not made here; the defendants seek to defend their practice without regard to the inmate's crime or punishment.

■ That choice of grounds is fatal. Whatever may be the case with prisoners on death row, a general conditioning of prison visitation on subjection to a strip search is manifestly unreasonable. The prisoners themselves are subjected to such searches before the visit, and, if the prison wants, after the visit as well (which is in fact the defendants' unchallenged practice with respect to prisoners on death row), 20 Ill.Admin.Code § 501.220(b)(1), and the visitation is under continuous surveillance by guards. Whether or not there is a constitutional right either to visit a prisoner, or to be visited in a prison (on which see, e.g., *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460–61, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Froehlich v. Wisconsin*, 196 F.3d 800 (7th Cir.1999); *Spear v. Sowders, supra*, 71 F.3d at 630), visits are something greatly valued both by the prisoners and by their visitors (and perhaps especially by prisoners on death row), so that the defendants' practice puts the visitors to a very painful choice—un-

necessarily so, judging by the state's own regulations, which require reasonable suspicion as a predicate to conditioning a prison visit on submission to a strip search. Cf. *Daugherty v. Campbell, supra,* 935 F.2d at 787 n. 7. In these circumstances, the costs of the defendants' practice seems clearly to exceed the benefits, and by a wide margin. This scotches their argument that it is a constitutional practice, and in combination with the great weight of the case authority (the Hawaiian cases having come at the very outset of the case development, so that one may doubt whether they would be followed by the Supreme Court of Hawaii today, two decades later) shows that the right upon which these plaintiffs are suing was clearly established at the time that the conduct that is complained of occurred, thus defeating the defense of immunity and requiring that the judge's ruling be

AFFIRMED.