**Bruce R. BAIRD, Plaintiff and Counterclaim Defendant,**

v.

**Roger F. CUTLER, in his individual and official capacities, and Salt Lake City Corporation, Defendants and Counterclaimants.**

Civ. No. 94–C–694G.

United States District Court, D. Utah, Central Division.

April 18, 1995.

Elizabeth T. Dunning, Watkiss, Dunning & Watkiss, Salt Lake City, UT, for plaintiff.

Stanley J. Preston, Richard A. Van Wagoner, and Max D. Wheeler, Snow, Christensen & Martineau, and Frank M. Nakamura, Salt Lake City Attorney's Office, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the Court on (1) Defendant's Motion to Dismiss; (2) Plaintiff's

Motion for Partial Summary Judgment; (3) Defendant's Motion for Summary Judgment on Counterclaim for Declaratory Judgment and Injunctive Relief; (4) Plaintiff's Motion for Summary Judgment on the Counterclaim; and (5) Defendants' Motion to Dismiss the Fourteenth, Fifteenth and Sixteenth Claims of Plaintiff's Amended Complaint. Plaintiff Bruce R. Baird was represented by Elizabeth T. Dunning of Watkiss, Dunning & Watkiss. Defendants Roger F. Cutler and Salt Lake City Corporation were represented by Stanley J. Preston, Richard A. Van Wagoner, and Max D. Wheeler, of Snow, Christensen & Martineau, and Frank M. Nakamura, of the Salt Lake City Attorney's Office.

## BACKGROUND FACTS

Plaintiff Bruce R. Baird is a Senior Assistant City Attorney for Salt Lake City. This position is designated as a merit-level employee position. In late 1993, Baird was responsible for several legal initiatives in the City Attorney's Office, including the City's gun-control policy.

In addition to his work in the City Attorney's Office, Baird is politically active in the community as a political commentator and former candidate for elected office. On November 10, 1993, he appeared on a local television program called the Vanocur Group. The program format consisted of a discussion group which was comprised of several local political pundits, including Baird. Baird's affiliation with the City Attorney's Office was not mentioned on the program. Near the end of the program, the participants were asked to make a final comment concerning recent political events. Baird's comment focused on the recent debate between former presidential candidate Ross Perot and Vice President Al Gore on the topic of the North American Free Trade Agreement, and included this statement: "[Perot] believes that everyone is trying to assassinate him; he's still alive—too bad!"

After the Vanocur Group program was aired, two local newspaper reporters, who author a popular column in which comments concerning current political and other events are often made, wrote that there was some irony that Baird (identified as an Assistant

City Attorney) would simultaneously advocate assassination and be responsible for the City's gun-control policy. This column came to the attention of Defendant Roger Cutler, City Attorney. On December 1, 1993, Deputy City Attorney Steven Allred told Baird that Cutler was angered by Baird's controversial remarks and the media response. On December 2, 1993, three Perot supporters came to the City Attorney's Office and asked to speak with Baird. Baird met with the three supporters briefly, but refused to converse with them while at his City office about his remarks on the program. Later that same day, Cutler met with Baird (Allred was also present) and told him that he (Baird) had mistreated the Perot supporters and disrupted the office. Cutler also told Baird that he was being placed on probation pending formal disciplinary proceedings.

On December 8, 1993, Cutler sent a memorandum to Baird that reiterated Baird's probationary status and stated that disciplinary measures were being considered. In the month that followed, Cutler and Baird discussed the matter together and with Elizabeth Dunning, Baird's attorney. On January 4, 1994, Cutler sent a letter to Baird and Dunning in which Cutler stated that the probation was "advisory" at that time, and that any disciplinary decisions would be made at a later time after investigation. Cutler obtained a copy of the Vanocur Group tape, and Baird gave Cutler copies of the affidavits of two City employees favorable to himself concerning Baird's interaction with the Perot supporters.

On March 9, 1994, Cutler provided a draft disciplinary memorandum for Baird's review and comment. Several events within the past three years were listed in the memorandum which Cutler claimed constituted evidence of a pattern of disruptive behavior by Baird that adversely affected the City Attorney's Office. Included in this list was an incident in which Baird allegedly had been overly critical of an employee who made a mathematical error in budget calculations. Baird made some recommendations regarding changes to the draft, including a comment that the reference to the incident involving the budgetary error was inappropri-

ate. Cutler then made some changes based on Baird's comments, and issued a final disciplinary memorandum on April 20, 1994. The memorandum contained private reprimands for Baird's perceived rude treatment of the Perot supporters and for his comments on the Vanocur Group program. No mention of the budgetary error incident was included in the final disciplinary memorandum. Baird was removed as counsel for the City on the gun-control matter, but he was not demoted, and his salary and benefits were not reduced.

On July 13, 1994, Baird brought the present suit against Cutler, in his individual and official capacities, under 42 U.S.C. § 1983, alleging violations of his free speech rights under the U.S. and Utah Constitutions, violations of his due process rights under the U.S. and Utah Constitutions, violations of his rights under the Utah Protection of Public Employees Act ("Whistleblower Act"), Utah Code Ann. § 67–21–3, and breach of employment contract. Baird seeks withdrawal of the reprimands, damages for humiliation and emotional distress, punitive damages, expungement of his personnel record, attorney's fees and costs, and such other relief the Court deems just.

Baird filed an amended complaint on October 12, 1994, alleging that certain acts of retaliation by Cutler against him occurred since the original action was filed, including intimidation of a City employee who Baird claims would testify on his behalf, attempting to demote Baird, and attempting to impose additional disciplinary sanctions on Baird for reporting another incident of budgetary waste. The supplemental retaliation claims are set forth in plaintiff's Fourteenth, Fifteenth and Sixteenth claims. Salt Lake City Corporation and Cutler have filed counterclaims.

## STANDARDS IN RE MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

■ In considering a motion to dismiss under Rule 12(b)(6), the Court looks only to the complaint and construes it in the light most favorable to the plaintiff, assuming all allegations to be true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A straight-forward motion to dismiss should not include supporting documents, such as affidavits, or assert affirmative defenses. When matters outside the pleadings are presented, the Court may treat a motion to dismiss as one for summary judgment and proceed under applicable Rule 56 provisions. Fed.R.Civ.P. 12(b); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). In this case, both parties have submitted affidavits and other supporting documents, and defendants have asserted affirmative defenses as part of their Motion to Dismiss and in response to Plaintiff's Motion for Partial Summary Judgment. The cross motions were presented by the parties, and were regarded by the Court, as "speaking" motions in the nature of motions for summary judgment.[1]

■ The standard for summary judgment motions requires that there is no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis of the motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party need not produce evidence to show the absence of a genuine issue of material fact, and may satisfy its responsibility by demonstrating to the Court that there is an absence of evidence to support the nonmovant's case. *Id.* at 325, 106 S.Ct. at 2553. When a properly supported motion for summary judgment has been made, the nonmov-

---

1. Fed.R.Civ.P. 56(c) provides that the Court give notice of its intention to consider a motion as one for summary judgment, so that the parties are given an opportunity to file opposing affidavits. *See Torres v. First State Bank,* 550 F.2d 1255, 1257 (10th Cir.1977); *Adams v. Campbell County School Dist.,* 483 F.2d 1351, 1353 (10th Cir.1973). Such notice in substance was given at oral argument without objection.

ant must set forth specific facts which show the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## ANALYSIS

The Court first will address the claims set forth in the original complaint which are the subject of Defendants' Motion to Dismiss and Plaintiff's Motion for Partial Summary Judgment. The federal claims set forth in the original complaint consist of free speech claims under the First Amendment and due process claims under the Fifth and Fourteenth Amendments. State law claims are also appended consisting of free speech claims under Article I, §§ 1 and 15 of the Utah State Constitution, state due process of law claims, claims under the Utah Protection of Public Employees Act, Utah Code Ann. § 67–21–3 ("Whistleblower Act"), and a breach of contract claim.

Second, the Court will address the supplemental claims set forth in the amended complaint which are the subject of Defendants' Motion to Dismiss Plaintiff's Fourteenth, Fifteenth and Sixteenth Claims. Additional claims of constitutional and other violations are set forth therein, based upon alleged retaliatory actions by Cutler against Baird in response to the filing of this lawsuit.

Finally, the Court will address defendants' counterclaims, which are the subject of Motions for Summary Judgment by both parties. In their counterclaims, defendants seek declaratory relief under 28 U.S.C. §§ 2201–2202 and/or injunctive relief under Fed. R.Civ.P. 65 to require Baird to terminate his attorney-client relationship with the City prior to continuing with his lawsuit against the City, or permitting the City to terminate Baird.

## I. *FREE SPEECH BY PUBLIC EMPLOYEES UNDER THE UNITED STATES CONSTITUTION.*

Plaintiff asserts five claims for violation of his free speech rights under the United States Constitution,[2] all of which are controlled by a determination of the scope of free speech by public employees as applied to this case. In this regard, plaintiff claims that the disciplinary actions described in his original complaint in essence were based upon comments made by Baird in a public television broadcast, which comments constituted "protected speech" in furtherance of his free speech rights. Baird also claims that he was unjustly disciplined for alleged rudeness to three Ross Perot supporters, and that Cutler's disciplinary action in that regard amounted to a pretext for disciplining his "protected speech" on the television broadcast.

### A. Discipline For "Protected Speech."

The Court initially notes that "a [governmental employer] cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), citing *Keyishian v. Board of Regents*, 385 U.S. 589, 605–606, 87 S.Ct. 675, 684–685, 17 L.Ed.2d 629 (1967). In this regard, the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), has identified a rough balancing test to be applied in cases involving the speech of public employees:

> The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734. Under this test, lower courts must determine whether speech at issue is on a matter of "public concern," and if so, whether the public entity's interest in governmental efficiency out-

---

**2.** Plaintiff asserts that Cutler violated his free speech rights by (1) placing Baird on probation (First Claim), (2) placing Baird on probation and in a provisional status (Third Claim), (3) pursuing a disciplinary investigation of Baird (Sixth Claim), (4) preparing a draft disciplinary memorandum regarding Baird's comments (Seventh Claim), and (5) giving Baird a written reprimand for his comments (Tenth Claim).

weighs the public employee's speech interest. These issues must be resolved by the court exercising its independent judgment in application of first amendment principles. *Berger v. Battaglia,* 779 F.2d 992, 998 (4th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986). *See also Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

■ Post hoc analysis of an employee's actual speech, as in this case, involves a less stringent balance and consideration of the impact on the employee's responsibilities than ex ante analysis, which brings into play prior restraint on speech often involving a broad category of expression by numerous potential speakers.[3] Accordingly, the court here applies the balancing test set forth in *Pickering* to the speech involved in this case, employing a post hoc analysis.

### 1. "Public Concern" Element of Protected Speech.

■ The Supreme Court in *Connick* addressed the "public concern" element of protected speech. The Court said: "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. at 147–48, 103

S.Ct. at 1690. The Seventh Circuit, in rejecting the idea that the form of speech alone is determinative of "public concern,"[4] stated:

> Those cases [creating the public concern test] are concerned not with drawing a line between different *forms* of protected speech—say, charges of official malfeasance versus entertainment—but with distinguishing between different *levels* of protection.... The courts have had to separate speech that is not very valuable socially from whistleblowing and other socially valuable expressive activities of public employees, and "matter of public concern" is the label of the distinction.

*Eberhardt v. O'Malley,* 17 F.3d 1023, 1027 (7th Cir.1994) (emphasis in original).

■ The distinction between employee speech during off-duty hours and speech made at work is not determinative of whether the speech addresses a matter of public concern. In *Rankin v. McPherson,* 483 U.S. 378, 386–387, 107 S.Ct. 2891, 2897–98, 97 L.Ed.2d 315 (1987), the Supreme Court found that a private statement made at work regarding an attempted assassination of President Reagan—"[i]f they go for him again, I hope they get him"—was addressing a matter of public concern. Statements made by an employee while off-duty might

---

3. In a very recent decision, the Supreme Court held a ban on government employee speech contained in the Ethics Reform Act of 1989, which precluded the acceptance of "honoraria," to be unconstitutional. *U.S. v. National Treasury Employees Union,* —— U.S. ——, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (hereinafter *"NTEU"*). Section 501(b) of that Act states: "An individual may not receive any honorarium while that individual is a Member, officer or employee." The 1989 Act "defined 'honorarium' to encompass any compensation paid to a Government employee for 'an appearance, speech or article.'" By this wording, the ban applies to nearly all employees of the federal government. The Court explained that the facts in *NTEU* differed from those at issue in *Pickering* and its progeny: "[T]his case does not involve a post hoc analysis of one employee's speech and its impact on that employee's public responsibilities," but rather the constitutionality of an ex ante rule, which is a "wholesale deterrent to a broad category of expression by a massive number of potential speakers." *NTEU,* —— U.S. at ——, 115 S.Ct. at 1013. The Court reasoned that the Government bore a heavier burden in *NTEU* to justify the restriction

on speech. "The widespread impact of the honoraria ban ... gives rise to far more serious concerns than could any single supervisory decision." *Id.* Further, "unlike an adverse action taken in response to actual speech, this [honoraria] ban chills potential speech before it happens." *Id.* Because of these factors, the Court required the government to clearly show that the ban was necessary to prevent actual disruption of the Government. The Court held that the Government's general assertion of administrative concerns was insufficient to justify the ban in that case, and stated that "a blanket burden on the speech of nearly 1.7 million federal employees requires a much stronger justification than the Government's dubious claim of administrative convenience." *Id.* at ——, 115 S.Ct. at 1017.

4. Hence, whether the form of speech be calculated to entertain or to seriously inform—such as in a political treatise—is not the relevant inquiry. Indeed, as noted by the Fourth Circuit, the First Amendment protects even speech on "matters trivial, vulgar, or profane." *Berger v. Battaglia,* 779 F.2d at 1000. But even those forms of speech could embrace matters of public concern.

also be found by courts to address a matter of public concern. *See Flanagan v. Munger,* 890 F.2d 1557, 1563 (10th Cir.1989); *Koch v. City of Hutchinson,* 847 F.2d 1436, 1446–47 (10th Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); *Matherne v. Wilson,* 851 F.2d 752 (5th Cir.1988).

In this case, Baird's comments were made on a television broadcast available to the public, were given in an hyperbolic fashion common to political commentary, and were directed at the topic of a recent political debate between two highly visible participants in national politics. These facts regarding the content, form and context of Baird's off-duty speech compel the Court's conclusion that the speech addressed a matter of public concern.

### 2. "Governmental Efficiency Interest" Element of Protected Speech.

In *Waters v. Churchill,* — U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), the Supreme Court established a reasonableness standard in regard to review by courts of public employer decisionmaking concerning employee speech, ruling that courts should look to the facts as the employer reasonably found them to be. The High Court said that lower courts must give "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern ...," — U.S. at ——, 114 S.Ct. at 1887, and that when the government hires a person to perform a particular job or function that will contribute to the effective operation of government, if that person "begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her." *Id.* at ——, 114 S.Ct. at 1888. The Court cautioned against requiring a public employer to base its employment decisions on factual circumstances that could later be determined with the benefit of hindsight by a judicial factfinder, finding that within reason employers should be permitted to rely on hearsay, past similar conduct, or purely personal knowledge of credibility. In this regard, the court said that "[w]hat works best in a judicial proceeding may not be appropriate in the employment context." *Id.*

Factors that courts should consider in assessing the reasonableness of a public employer's decisions concerning employee speech include, *inter alia,* the amount of evidence considered by the employer, the position and responsibilities of the employee, relevant past conduct of the employee, the reliability of the source of information that reflects adversely on the employee, and the strength of any evidence against the employee. *Id.* at —— – ——, 114 S.Ct. at 1888–89. In *Rankin v. McPherson,* the Supreme Court stated that "[t]he burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails."[5] *Rankin,* 483 U.S. at 390, 107 S.Ct. at 2900.

5. In *Rankin,* a clerk-typist in a County Constable's Office was fired for responding to the news of the attempted assassination of President Ronald Reagan by stating: "If they go for him again, I hope they get him." The clerk-typist claimed that the termination of her employment was a violation of her free speech rights under the First Amendment. *Rankin,* 483 U.S. at 382–383, 107 S.Ct. at 2895–96. As this Court has done in the instant case, the Supreme Court applied the two-part test as set forth in *Pickering,* and determined that the speech at issue in *Rankin* addressed a matter of public concern. *Id.* at 386, 107 S.Ct. at 2897. The Supreme Court then proceeded to "balance [the clerk-typist's] interest in making her statement against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 388, 107 S.Ct. at 2899, citing *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. In *Rankin,* the County Constable testified that interference with office efficiency had not been a consideration in his discharge of the employee. In fact, he was not concerned that the employee's speech had interrupted the work of the office in any way. *Rankin,* 483 U.S. at 389, 107 S.Ct. at 2899. Further, the Supreme Court noted that there was no evidence that the employee's speech discredited the County Constable's Office among the public. *Id.* In addition, the clerk-typist employee in *Rankin* was not in a position of responsibility or policy-making, and thus her speech had minimal impact on the efficient functioning of the public employer. *Id.* at 390–91, 107 S.Ct. at 2900. Based on these facts, the Supreme Court went on to hold that under the balancing test set forth in *Pickering,* the local government's interest in promoting the efficiency of public service weighed less than the employee's speech rights in a matter of public concern. *Id.* at 392,

Turning to the facts of this case, the court finds that public employee Baird's speech did involve matters of public concern, but that the government's efficiency interest on balance outweighs plaintiff's freedom of speech rights. Manifestly, Baird's comments on the Vanocur Group program constituted comments on a matter of public concern. Baird's speech was in reference to the Ross Perot–Al Gore debate concerning the North American Free Trade Agreement, an issue of great national significance involving persons of national importance. The comments were made on a program that exclusively engages in political debate and commentary. Although the statements may have been more calculated towards entertainment than serious political commentary, Baird's purpose or manner in speaking does not negate the nature of the speech as relating to a matter of public concern.

With respect to defendant's interest in the effective and efficient operation of government, the City Attorney's Office is wholly responsible for representing the City in its legal initiatives, and the effective functioning of the office is vital to achievement of the City's policy goals. At the time of his comments, Baird was not an insignificant employee in the office. Rather, he was a Senior Assistant City Attorney who was responsible for several City legal campaigns, including cases involving crime-control (waiting period for gun purchases). Baird's position also gave him responsibility and authority to represent the City publicly, and to implement and enforce City policies.

■ This Court finds and rules that Cutler acted reasonably in his disciplinary determinations and that Cutler's disciplinary response was reasonable under First Amendment post hoc analysis. Baird's comments on the Vanocur Group program were connected with the City Attorney's Office by local newspaper reporters, and the City Attorney's Office was criticized. Cutler believed that Baird's comments would continue to be connected to the City Attorney's Office, with the result that legal initiatives pending in the Office and other external operations would be adversely affected.[6]

**B. Discipline For Alleged Rudeness.**

■ Defendant Cutler, in part, based his justification for disciplinary action on his perception of Baird's alleged rude behavior toward Perot supporters. Even though plaintiff claims that this was pretextual, the Court need not determine that matter since it is the employer's reasonable belief as to the appropriate action required which controls.

■ It is clear that public employers may prohibit employees from being inconsiderate to the public, whether the rudeness occurs in spoken or written form. In this regard, the Supreme Court has stated that "a public employer may, consistent with the First Amendment, prohibit its employees from being 'rude to customers.'" *Waters v. Church-*

107 S.Ct. at 2901. The facts and disciplinary action at issue in the instant case are clearly distinguishable from those in *Rankin.* Hence, this Court's application of the *Pickering* balancing test results in a different conclusion than in *Rankin* as to justification for disciplinary action.

**6.** Defendant Cutler argues that he is entitled, at a minimum, to qualified "good faith" immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Dixon v. Richer* 922 F.2d 1456 (10th Cir.1991). This argument is addressed to Baird's federal claims regarding free speech and due process. Cutler argues that the law was not "clearly established" with respect to either free speech rights of public employees, or due process rights as concerns an employee's interest in governmental benefits (addressed *infra*). As a result, defendant Cutler submits that a governmental official could not reasonably be expected to understand or antici-

pate the rules of these areas of the law, and is therefore entitled to qualified immunity. *Powell v. Mikulecky,* 891 F.2d 1454, 1456 (10th Cir. 1989). This Court agrees. Courts have determined that the rules applicable to public employee speech and due process rights are not well-established. *See Williams v. Kentucky,* 24 F.3d 1526 (6th Cir.1994), *cert. denied, Allen v. Williams,* —— U.S. ——, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994) (concerning due process); *Melton v. City of Oklahoma City,* 879 F.2d 706, 728–29 (10th Cir.1989) (concerning free speech), *reh'g granted on other issues,* 888 F.2d 724 (10th Cir.1989), *and on reh'g,* 928 F.2d 920 (10th Cir. 1991), *and cert. denied,* 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991). This Court decides that Baird's free speech and due process rights were not violated as claimed in the original complaint, but that in any event Cutler's qualified immunity defense would apply with respect to those claims.

*ill,* —— U.S. at ——–——, 114 S.Ct. at 1886–87. Baird claims that his comments were not rude, and seeks to present evidence that supports this conclusion. He alleges that Defendant Cutler did not review relevant facts concerning Baird's encounter with the Perot supporters, including affidavits from two witnesses.

 While the Supreme Court's holding in *Waters* requires that a public employer make a sufficient investigation of the facts and reach a reasonable belief as to the appropriate action required, a public employer is not required to follow "procedures that substantially mirror the evidentiary rules used in court." *Id.* at ——, 114 S.Ct. at 1888. Rather, public employers may "rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores." *Id.* Indeed, the Supreme Court has stated that "a manager may legitimately want to discipline an employee based on comments by patrons that the employee has been rude, even though these complaints are hearsay." *Id.* In the instant case, Cutler obtained information regarding Baird's interaction with the Perot supporters from the supporters themselves and from face-to-face meetings with Baird, as well as from the two affidavits mentioned above.

In imposing disciplinary action in this case, it is apparent that Defendant Cutler took into account relevant past conduct of the plaintiff, including a past public meeting.[7] Also, as Baird's employer, Cutler was privy to certain information regarding Baird's employment history. It is apparent that Cutler believed that such difficulties might continue, or that Baird would make similar comments in the future and with similar results.

7. In June 1993, Baird appeared as counsel for the City at a public meeting with a community group which goes by the acronym "SLAC", where he called the citizen members of the group "Slacko–Wackos." This incident resulted in citizen complaints to the Mayor's Office, and required a letter of apology from the City Attorney's Office.

8. Some courts have questioned the extent to which disruption of a public employer's external operations and relationships by employee speech

While this Court recognizes that Cutler might have responded without imposing disciplinary sanctions against Baird, the Court will not substitute a new or different approach when the approach taken by the employer is a reasonable one.[8] Therefore, the Court holds that none of the disciplinary steps taken in this case as described in the original complaint amounts to a violation of Baird's free speech rights under the First Amendment to the United States Constitution.

## II. PROCEDURAL DUE PROCESS OF LAW UNDER THE UNITED STATES CONSTITUTION.

 An essential prerequisite to any claim that Fourteenth Amendment due process rights were violated is the existence of a constitutionally cognizable liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Property," as defined by the Supreme Court, constitutes a "broad range of interests that are secured by 'existing rules and mutual understandings.'" *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2709, 33 L.Ed.2d 570 (1972) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). The Supreme Court has further explained that the existence and scope of specific property interests are defined by some source other than the Constitution—most often state law. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. When "the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *Roth* ).

may justify disciplinary action. *See generally Berger,* 779 F.2d at 1001; *Waters v. Chaffin,* 684 F.2d 833, 839–40 (11th Cir.1982). Neither of these cases, nor any binding precedent of which the Court is aware, conclusively addresses this issue. In this case, the Court concludes that Cutler's determination that Baird's actions and comments created a potential for disruption of the external operations of the City Attorney's Office was reasonable.

Baird argues that he possesses a property interest in his position as a merit-level employee. It is clear that his contract with the City was based on a mutual understanding that he would be entitled to the benefits of a merit-level position. Baird's expectation that his future employment would be subject to those benefits and protections was not an unilateral or abstract one. The Court does not doubt that other persons employed by the City were also designated as merit-level employees, so it is clear that the rules governing merit-level employees were well-established and understood by all parties. Such a property interest satisfies the Supréme Court's requirements for constitutional protection under the Due Process Clause:

> A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699. Accordingly, the Court determines that Baird possessed a constitutionally protected property interest.

Next, the Court addresses the issue of whether Baird's rights to due process were violated in this case. In this regard, Baird proffers essentially two arguments: (1) that Cutler violated Baird's right to due process by placing him on probation and, therefore, on a provisional status; and (2) that Cutler violated Baird's right to due process because Cutler was not an impartial decision-maker.

The Supreme Court has declared that "[t]he essential requirements of due process ... are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Additional procedural requirements in any case must be determined by relevant facts and circumstances. *Id.* at 545–46, 105 S.Ct. at 1495. In *Loudermill,* the Court considered the level of due process that was required in a termination case, and held that a pretermination hearing was necessary. *Id.* at 542, 105 S.Ct. at 1493. The Court qualified this requirement, however, explaining that the pretermination hear-ing need only be an informal opportunity to respond. *Id.* at 545, 105 S.Ct. at 1495.

The level of due process that courts will require pursuant to the Fourteenth Amendment varies with the significance of the property interest at stake. *Cf. id.* at 542, 105 S.Ct. at 1493. Clearly, retaining employment is a significant interest. The potential deprivation of a person's means of livelihood demands a high level of due process. *Id.* at 543, 105 S.Ct. at 1493. Less due process is required where the property interest is less significant. Thus, in *Barry v. Barchi,* 443 U.S. 55, 65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979), the Supreme Court considered the suspension of a trainer's license, and held that the employee's access to the material on which the charges against him were based and an opportunity to respond in writing constituted adequate due process.

### A. Placement on Probation and Private Reprimand.

Many cases have held that a simple reprimand that does not affect a person's rank or pay does not qualify as a deprivation of a constitutionally cognizable property interest, and therefore the Due Process Clause requires no special procedures. Several of these cases have been cited by defendants. *See Booker v. City of Macon,* 56 Fair Empl. Prac.Cas. (BNA) 47, 1991 WL 130669 (M.D.Ga.1991) (holding that because plaintiff "suffered neither a loss in pay nor in rank," or any other "actual deprivation, plaintiff's due process claims necessarily fail"); *Lasuchin v. Perrin,* 1988 WL 95079 1988 U.S. Dist. LEXIS 10202 (E.D.Pa., Sept. 12, 1988) (A formal reprimand, though possibly affecting plaintiff's future teaching assignments and employment at the university, did not presently affect plaintiff's employment. "The possibility of future harm cannot be the sole basis of a property interest protected by the fourteenth amendment."); *Linhart v. Glatfelter,* 584 F.Supp. 1369 (N.D.Ill.1984), *aff'd.,* 771 F.2d 1004 (7th Cir.1985).

Baird argues that the act of placing him on probation was itself a violation of his due process rights. This Court disagrees.

Even assuming that Baird's contract with the City, and the merit-level employment status that he enjoys under that contract, could be said to establish an agreement that the City will not place Baird on probation, the failure of the City to adhere to the procedures set forth therein would not rise to the level of a due process violation. In considering the sufficiency of a meeting in which a supervisor informs the employee that his job is in jeopardy and that disciplinary action would follow, the Tenth Circuit has stated that "[a] brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy the pretermination due process requirements of *Loudermill*." *West v. Grand County*, 967 F.2d 362, 368 (10th Cir.1992). *See also Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir.1989).

Baird was given notice of the grounds for the institution of disciplinary proceedings against him at the time that Cutler initially met with him, and placed him on probation. Over the course of the following months, Baird participated frequently in the disciplinary process. Baird met with Cutler to discuss the grounds for discipline. Baird and his attorney were apprised of developments in the process, and given an opportunity to respond. A copy of the draft final reprimand was given to Baird for his comments, and Cutler changed the wording and substance of the final reprimand as a result. This level of input and opportunity to participate in the process is sufficient to satisfy the "opportunity to respond" aspect of the *Loudermill* standard. Baird was not terminated. Rather, he was placed on temporary probation pending a disciplinary investigation. At the conclusion of the investigation, Baird was given a private written reprimand. Assuming that this sort of discipline constitutes a deprivation of Baird's property interest, it does not rise to the level of a constitutional violation of Baird's due process rights as concerns the significance of the property interest at stake. Accordingly, this Court holds that Baird was given adequate due process.

B. Discipline by an Interested Party.

 As referenced above, Baird complains that since Cutler was an involved par-

ty, and allegedly was not impartial, Baird's due process rights were violated. In support of this proposition, Baird cites *Patrick v. Miller*, 953 F.2d 1240, 1244 (10th Cir.1992), which states that "the fundamental due process requirement 'is the opportunity to be heard at a meaningful time and in a meaningful manner.' (internal citations omitted)." In *Patrick*, the Tenth Circuit considered factual circumstances that are different from those in the present case at least in one important way. *Patrick* involved a level of discipline—termination—which requires a high level of due process. The Tenth Circuit stated that due process in a termination proceeding requires at least three elements: "1) an impartial tribunal; 2) notice of the charges given a reasonable time before the hearing; and 3) a pretermination hearing except in emergency situations." *Id.* It is clear that the Tenth Circuit was relying on the *Loudermill* requirement that a pretermination hearing be held in cases where the discipline being given is termination. As noted above, however, *Loudermill* also stands for the proposition that the requisite level of due process depends on the circumstances of the case, including the significance and form of the discipline that is ultimately given. *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495.

In the present case, Baird was subjected to mild discipline. It would be unreasonable for this Court to hold that in every case where mild discipline is given, such as the process and ultimate conclusion resulting in a private written reprimand, a manager of a public employer must refer the case to "an impartial tribunal." The Court believes that the exigencies of efficient government do not require such a reference. Therefore, the Court holds that the involvement of Cutler as the decision-maker in this case did not violate Baird's due process rights.

### III. CLAIMS OF RETALIATION FOR PURSUING LITIGATION—UNITED STATES CONSTITUTION.

Baird alleges that in retaliation for the pending litigation, Cutler intentionally disrupted Baird's annual leave accrual, attempted to intimidate another City employee who is an advocate for Baird, interfered with

Baird's personal and professional relationship with the same City employee, attempted to impose additional disciplinary sanctions because Baird reported the mishandling of another City contract, and attempted to demote Baird. These allegations are set forth in Baird's amended complaint, in which he asserts a fourteenth claim (free speech), fifteenth claim (due process), and sixteenth claim (Whistleblower Act).

### A. Retaliation as Federal Claim for Violation of Free Speech Rights.

Baird alleges that Cutler has continued to impose informal sanctions on Baird since this lawsuit was filed. Baird claims that the sanctions were imposed because of the assertion in this pending litigation of his free speech rights.

■■■ The First Amendment protects an employee in most cases against retaliation for filing a lawsuit to protect his or her constitutional rights. Thus, in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), *reh'g denied*, 497 U.S. 1050, 111 S.Ct. 13, 111 L.Ed.2d 828 (1990), the Supreme Court stated:

> "... the First Amendment, as the court below noted, already protects state employees not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights.'"

(quoting *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 954 n. 4 (7th Cir.1989)). Included within the First Amendment protection is the right of public employees to participate in litigation designed to remedy a violation of their constitutional rights. *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).

■■■ In order to determine whether a lawsuit by a public employee qualifies for protection under the First Amendment, courts engage in the same analysis that applies to speech by public employees generally. Hence, the "content, form and context" of the lawsuit must demonstrate that it addresses a matter of public concern. *Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir.1994), *reh'g denied*, (7th Cir., Aug. 26, 1994); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *Auriemma v. Rice*, 910 F.2d 1449 (7th Cir.1990), *cert. denied, Rice v. Auriemma*, 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991); *Day v. South Park Independent Sch. Dist.*, 768 F.2d 696, 703 (5th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986); *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir.1985) (per curiam); *Arvinger v. Mayor & City Council of Baltimore*, 811 F.Supp. 1121, 1123 (D.Md.1993), *rev'd on other grounds*, 31 F.3d 196 (4th Cir.1994).[9] In determining whether the content, form and context implicate public concern, courts must consider the nature and the underlying motivation of the lawsuit in question. *Arvinger*, 811 F.Supp. at 1124. In so doing, courts look to the circumstances giving rise to the lawsuit. *See Zorzi*, 30 F.3d at 896–97; *Auriemma*, 910 F.2d at 1460. Hence, in *Zorzi*, the Seventh Circuit found that a public employee's lawsuit addressed a matter of public concern where the suit sought redress for alleged constitutional violations arising from disciplinary sanctions imposed on the employee after she participated in a political campaign, since "[p]olitical speech is clearly a matter of public concern." *Zorzi*, 30 F.3d at 896. *See also, Altman v. Hurst*, 734 F.2d 1240, 1244 n. 10 (7th Cir.1984) (per curiam) ("A close reading of [Supreme Court cases concerning First Amendment protection of the right to

**9.** In *San Filippo v. Bongiovanni*, 30 F.3d 424, 434–43 (3rd Cir.1994), *reh'g, en banc denied*, (3rd Cir., Aug. 18, 1994), *cert. denied, Bongiovanni v. San Filippo*, ⸺ U.S. ⸺, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995), the Seventh Circuit ruled that First Amendment protection applies to litigation intended to vindicate constitutional rights, whether or not the lawsuit in question addresses

a matter of public concern. Similarly, in *Fuchilla v. Prockop*, 682 F.Supp. 247, 262 (D.N.J.1987), the court held that a public employee may not be retaliated against for the filing of any lawsuit whether or not it addresses a matter of public concern (citing *California Motor Transport* for that proposition).

seek judicial redress of grievances] shows that the Court was concerned about political expression ...."); *cert. denied*, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984).

■ The "public concern" nature of a lawsuit is not vitiated by the fact that a plaintiff has a personal motive for filing suit and seeks remedies of a personal nature in the form of damages. See *Zorzi*, 30 F.3d at 897. Nor is the nature of a lawsuit altered by a judicial determination that the disciplinary measures imposed in connection with the implicated speech do not rise to the level of constitutionally protected free speech rights under the balancing test set forth by the Supreme Court in *Pickering*. In this regard, the Seventh Circuit has held that retaliation against public employees by supervisors in the form of harassment or penalties for seeking redress in federal court because of an alleged violation of that employee's constitutional rights "would be intolerable *even for claims later found to be without merit.*" *Auriemma*, 910 F.2d at 1460–61 (emphasis added).

■ This Court considers that balancing Baird's free speech rights as asserted in his amended complaint (fourteenth claim) against governmental efficiency interests will require further proceedings. Since that claim presents issues that are not appropriately resolved pursuant to defendants' pending motion, defendants' motion to dismiss Baird's retaliation claim regarding his free speech rights is denied.

### B. Retaliation as Claim for Violation of Federal Due Process Rights.

Two of Baird's allegations of retaliatory actions by Cutler implicate Baird's property interest in his employment. First, Baird alleges that Cutler unilaterally charged him for a day of annual leave when sick leave was appropriate. Baird himself alleges, however, that this decision was reversed by Cutler's staff. Therefore, the Court finds no cogniza-

ble injury to Baird's constitutionally protected property interest as regards his leave accrual. Baird also alleges that Cutler attempted to demote him because of the lawsuit. Baird has not alleged that he was actually demoted, and he was successful at a hearing on the matter in defeating the alleged attempted demotion.[10] Therefore, there is likewise no cognizable injury arising from this allegation. Accordingly, the fifteenth claim (due process) set forth in Baird's amended complaint is dismissed.

## IV. *STATE LAW CLAIMS.*

In his original complaint, Baird claims violations of his free speech and due process rights under relevant provisions of the Utah Constitution, violation of the provisions of the Utah "Whistleblower Act," Utah Code Ann. § 67–21–3, and breach of his employment contract. In his amended complaint, Baird claims violations of free speech, and due process rights, as well as violations of the Utah "Whistleblower Act" arising from alleged acts of retaliation by Cutler.

Baird's claims under the Utah Constitution are based on the same factual allegations as his claims under the United States Constitution. The free speech and due process provisions of the Utah Constitution and the United States Constitution are similarly worded. As regards free speech, the First Amendment to the United States Constitution states, "Congress shall make no law ... abridging the freedom of speech ...."; and Article I, Section 15 of the Utah Constitution states, "No law shall be passed to abridge or restrain the freedom of speech ...." Concerning due process, the Fifth and Fourteenth Amendments to the United States Constitution guarantee that the government shall not "deprive any person of life, liberty, or property, without due process of law ..."; and Article I, Section 7 of the Utah Constitution states that "No person shall be deprived of life, liberty or property, without due process of law." In the several cases in which

10. Indeed, the defendants note that Baird was afforded a hearing regarding Cutler's suggestion that Baird be transferred. This hearing took place before Brenda Hancock, an independent arbiter appointed by the Mayor. Baird and his counsel were present at the hearing, and were afforded an opportunity to be heard. Baird's response and communication with Ms. Hancock contributed to her decision to refuse his reassignment. Under these circumstances, it appears that Baird received sufficient due process.

the Utah Supreme Court has discussed the interpretation of the aforesaid provisions of the Utah Constitution, federal case law has been cited and relied upon. *See Terra Utilities, Inc. v. Public Serv. Comm'n,* 575 P.2d 1029, 1033 (Utah 1978) (holding that decisions of the United States Supreme Court regarding the due process guarantees of the United States Constitution "are highly persuasive as to the application of that [due process] clause of our state Constitution"); *West Gallery Corporation v. Salt Lake City Board of Commissioners,* 586 P.2d 429 (Utah 1978) (concerning free speech). *See also Jane L. v. Bangerter,* 794 F.Supp. 1528, 1531–32 (D.Utah 1992). Accordingly, Baird's free speech and due process claims under the Utah Constitution are dismissed.

■ Likewise, Baird's claims for violation of the Utah "Whistleblower Act," as asserted in the original complaint, are dismissed. That Act prohibits adverse action against a governmental employee "because the employee ... communicates in good faith the existence of any waste of public funds, property, [etc.] ..." Utah Code Ann. § 67–21–3(1)(a). However, the facts of this case as alleged in the original complaint do not indicate a violation of the "Whistleblower Act." Reference in draft reprimands by Cutler to Baird's report of budgetary waste do not criticize the report of waste itself. Rather, such reference only mentions Baird's failure to follow the proper reporting procedures or protocol, and that Baird engaged in acts of alleged incivility in that regard. While the "Whistleblower Act" prohibits employers from implementing "rules or policies that unreasonably restrict an employee's ability to document the existence of waste," Utah Code Ann. § 67–21–3(4), the Act does not prohibit an employer from creating rules or policies regarding waste reporting. Discipline for failure to abide by reasonable established procedures, or for rudeness or incivility, even when it occurs in connection with "whistleblowing," does not constitute a violation of the "Whistleblower Act." In any event, reference in draft reprimands to Baird's report of waste were not included in the final private reprimand, so there was no actual retaliation.

With respect to the remaining state law claims, 28 U.S.C. § 1367 grants the Court discretion to decline to exercise supplemental jurisdiction when the state law claims predominate over any remaining federal claim. A review of the documents submitted by both parties reveals that the remaining state law issues have not yet been comprehensively argued or addressed. The state law claims that remain clearly "predominate over the claim ... over which [this Court] has original jurisdiction." 28 U.S.C. § 1367(c)(2). Therefore, the Court declines to exercise its supplemental jurisdiction over those claims and dismisses them without prejudice to further proceedings in state court, except that this Court will retain jurisdiction over the state constitutional claim that coincides with Baird's remaining federal claim concerning retaliation for assertion of free speech rights.

## V. *LITIGATION BY PUBLIC EMPLOYEES AGAINST GOVERNMENTAL EMPLOYERS.*

■ The parties have submitted memoranda and proffered oral argument concerning this unusual claim and request for relief. Defendants vigorously argue that Baird's professional obligations as an attorney preclude him from filing a lawsuit against the City, his current client. It is true that an attorney is bound by special ethical obligations in this regard. *See generally Smoot v. Lund,* 13 Utah 2d 168, 369 P.2d 933, 936 (1962) ("[An attorney] must not represent interests adverse to those of [his] client"). Nevertheless, the ethical duties of loyalty to a client must be applied differently to attorneys who are also actual employees of their client, since the client then owes duties to the attorney as his or her employer that are not present in the traditional attorney-client relationship.

■ Numerous cases have held that employees are entitled to bring lawsuits against their employers alleging violation of the employee's civil rights. In *California Motor Transport v. Trucking Unlimited,* 404 U.S. at 510, 92 S.Ct. at 611, the Supreme Court ruled that the right to participate in litigation to remedy infringement of constitutionally protected rights is protected by the First

Amendment. Likewise, in *Berndt v. Jacobi,* 781 F.Supp. 553, 558 (N.D.Ill.1991), *aff'd,* 978 F.2d 1261 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993), the court held that an employer may not retaliate against its employee by terminating that employee when he or she seeks to protect constitutional rights in a lawsuit against the employer. *Id.* This Court sees no reason why that general philosophy should not apply equally to attorneys in their role as employees. An exception may exist where an attorney sues her employer involving the very subject matter for which she is responsible. Thus, in *Jones v. Flagship Intern.,* 793 F.2d 714 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), the Fifth Circuit held that an in-house attorney could be terminated where her lawsuit involved the precise issues for which she was responsible in the office, and where the attorney solicited other employees to join in the lawsuit.

Similar questions of loyalty or adverse interests might arise if this were a case where Baird's current lawsuit directly involved City legal initiatives for which he was responsible and about which he held information in confidence. However, the instant case does not present such a situation. While it is true that Baird's comments on the Vanocur Group television program peripherally involved City legal initiatives concerning gun policy for which he was responsible and about which he held information in confidence,[11] the gun control policy is not the subject matter of his lawsuit. Neither has Baird solicited others to participate in the instant lawsuit. Consequently, this Court concludes that Baird's lawsuit without more does not create an adverse interest with regards to his employer such that termination is immediately necessary.

Based upon the foregoing, it is hereby

ORDERED, Defendants' Motion to Dismiss (Original Complaint) is GRANTED and Plaintiff's Motion for Partial Summary Judgment (Original Complaint) is DENIED with respect to the federal claims concerning free speech and due process over which this Court has original jurisdiction under 28 U.S.C. § 1332; it is further

ORDERED, Defendants' Motion to Dismiss the state constitutional claims concerning free speech and due process (Original Complaint) is GRANTED; it is further

ORDERED, Defendants' Motion to Dismiss Plaintiff's Fourteenth Claim (Amended Complaint) is DENIED; it is further

ORDERED, Defendant's Motion to Dismiss Plaintiff's Fifteenth Claim (Amended Complaint) is GRANTED; it is further

ORDERED, Defendants' Motion for Summary Judgment on Counterclaim for Declaratory Judgment and Injunctive Relief is DENIED, and Plaintiff's Motion for Summary Judgment on the Counterclaim is GRANTED, without prejudice; it is further

ORDERED, Plaintiff's Sixteenth Claim (Amended Complaint), concerning the Utah Protection of Public Employees Act, Utah Code Ann. § 67-21-3, and Plaintiff's Thirteenth Claim (Original Complaint), concerning breach of employment contract, are dismissed without prejudice to proceedings which may be filed in state court, since this Court declines under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Counsel for defendants are directed to prepare and lodge with the Court a form of judgment consistent with this Memorandum Decision and Order after first complying with D.Ut. Rule 206.

---

11. As noted by defendants in their memoranda, if a concern arises that confidential information may become relevant to the employee's case, the court may restrict use of documents to protect the employer. *See Breckinridge v. Bristol–Myers Co.,* 624 F.Supp. 79 (S.D.Ind.1985). *Cf. Balla v. Gambro, Inc.,* 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991).